WILLIAM J. LEMP, Appellee, v. NIXON FULLERTON, Sheriff, Appellant.

1. **Intoxicating Liquors:** ORIGINAL PACKAGES: POLICE REGULATIONS: REPLEVIN. Where intoxicating liquors shipped from a foreign state into this state for sale in the original packages, prior to the enactment of the act of August 8, 1890, fifty-first congress (26 Stat. L. 313), were seized under a search-warrant issued in pursuance of the police regulations of the state, they could not be taken from the officer making the seizure under a writ of replevin.

2. **Justice's Court:** CONTINUANCE: JURISDICTION. After the plaintiff had commenced this action of replevin and the plaintiff had appeared before the justice who had issued the search-warrant, and joined issue

upon the question of his right to the liquors seized thereunder, the justice ordered upon the motion of the defendant herein that the case stand continued to a date over five months hence, until the district court could determine the rights of the parties under the writ of replevin. *Held*, that the right of the justice to make such order could not be determined in this case.

3.  **Practice:** MOTION FOR JUDGMENT: EVIDENCE. Where in an action of replevin issue was joined as to the value of the property in question, but the evidence as to its value was without conflict, *held*, that the defendant being entitled to judgment upon the evidence, his motion to take the case from the jury and for judgment for the value of the property thus shown should have been sustained.

*Appeal from Des Moines District Court.*—HON. CHARLES H. PHELPS, Judge.

MONDAY, JUNE 1, 1891.

ACTION to recover the possession of specific personal property. By direction of the court, the jury returned a verdict in favor of the plaintiff, and judgment was rendered thereon. The defendant appeals. *Reversed.*

*Newman & Blake*, for appellant.

*S. L. Glasgow*, for appellee.

ROBINSON, J.—In the year 1889 the plaintiff was a brewer, engaged in business in St. Louis. In May of that year he shipped from St. Louis to Burlington, consigned to himself, a carload of beer. His agents at Burlington were Werthmueller & Ende. After the car containing the beer had been placed on a sidetrack at Burlington, it was opened by the agents named, but on the fifteenth day of May, before the beer had been removed, and while it was in the original casks in which it had been shipped, a part of it, including that in controversy, was seized by the defendant, as sheriff, by virtue of a search-warrant issued under the provisions of section 1544 of the Code. The information on

which the search-warrant was issued charged that the intoxicating liquors which it described were owned by Werthmueller & Ende. After the defendant made his return on the search-warrant, the justice of the peace who had issued it caused notice to be given to Werthmueller & Ende, and to all others whom it might concern, to appear at his office on the twenty-fourth day of May, to show cause, if any they had, why the liquors seized should not be forfeited. On the day fixed for the hearing the plaintiff appeared in the justice's court, and filed a pleading, in which he alleged that he was the owner of the property in controversy; that it was shipped from Missouri to Iowa, and seized by the sheriff while in the original packages, and before it had been delivered by the railway company; that it had not been sold, nor kept for sale, in violation of the laws of Iowa. On the sixteenth day of May this action was commenced, and the property in controversy was surrendered to the coroner. After the plaintiff in this action had filed the pleading described in justice's court, the state moved for a continuance, and as ground for the motion showed that this action had been commenced, and that the property seized by the sheriff under the search-warrant had been taken from him, and was not at that time under his control, nor subject to the order of the court. The court thereupon sustained the application, and continued the case until November 5, 1889, "to enable the district court to make some adjudication in the replevin suit." It was further ordered that, if the suit should be still pending at the date to which the cause was continued, then it should be subject to a further continuance, on the request of the state. On the fifth day of November, 1889, the cause was continued to the next day by the justice, on account of the general election. On the sixth day of November, there being no appearance by the claimants, the property in controversy was adjudged to be for-

feited. When the coroner attempted to serve the writ of replevin, the sheriff at first refused to surrender the property. Thereupon an application was made to the court from which the order issued, which recited the refusal of the sheriff and asked that he be required to show cause why he should not be punished for contempt. The court upon that application ordered the sheriff forthwith to deliver to the coroner the property in controversy, and that order was obeyed. The defendant asked the court, by motion, to cancel that order, but the motion was overruled. In September, 1889, the defendant filed his answer. In January, 1890, the plaintiff filed a reply, and the trial of the cause was commenced to a jury. After all the evidence had been introduced, the defendant asked the court to direct the jury to return a verdict for him, but was refused. The court then, upon its own motion, instructed the jury to return a verdict for the plaintiff, which was done.

I. The plaintiff contends that the law under which the seizure was made by the defendant is unconstitutional, and relies upon the case of *Leisy v. Hardin*, 135 U. S. 100; 10 Sup. Ct. Rep. 681, as sustaining his claim. In that case the supreme court of the United States held that a citizen of one state has a right to import intoxicating liquor into another state, and there sell it in original packages, notwithstanding a prohibition of the statutes of the state into which the liquor was imported, and in which it was sold. So far as such statutes prohibit transactions of that kind, they were held to be in conflict with the constitution of the United States, and, therefore, void. But it was not held that a state may not enforce its police regulations against traffic in liquor which is not in the nature of interstate commerce. The state has the right to enforce such regulations, and one of the means provided is a proceeding by search-warrant, such as was adopted in regard

1. INTOXICATING liquors: original packages: police regulations: replevin.

to the liquor in controversy. It may be conceded that such liquor was prohibited from forfeiture by reason of the rule announced in the *Leisy case*, and that upon the final hearing before the justice it should have been restored to the plaintiff. But the object of the proceeding was to ascertain if a law of the state was being violated, not to declare forfeited property which was not subject to its provisions. In such a case, if the court errs, the party aggrieved has the right of appeal. The proceeding cannot, however, be ignored nor treated as a nullity. It is a duly constituted means of ascertaining and determining the rights of the respective parties in interest, including the right of the owner of the property to claim it as exempt from the operation of the state laws, and the decision of the court is binding, as in other cases. It follows from what we have said that the search-warrant was properly issued, and the property in controversy was rightfully in the hands of defendant when this action was commenced and the writ of replevin was issued. It was said in *Funk v. Israel*, 5 Iowa, 438, 450, that liquors seized by virtue of a search-warrant issued under a statute substantially the same as section 1544 of the Code could not be replevied. That decision was approved in *State v. Harris*, 38 Iowa, 242, 246. It was said in the case last cited that the writ of replevin was not a lawful process for taking property from the possession of an officer rightfully holding it, under a writ properly issued in a criminal proceeding. We conclude that the writ of replevin was wrongfully sued out in this case, and that the court had no power to cure the defect by ordering the sheriff to deliver the property in question to the coroner.

II. It is urged that the action of the justice in continuing the proceedings in connection with the search-warrant from May 24 to November 5, 1889, was unauthorized, and that by so doing he lost jurisdiction of the case.

2. JUSTICE'S court: continuance: jurisdiction.

When this action was commenced, the justice's court had jurisdiction of the property in controversy. It was in the custody of the law, subject to the further order of that court. The proceedings of that court were entirely regular, until after plaintiff had appeared and pleaded. When he entered his appearance the court had complete jurisdiction of both the person and property of the plaintiff in this action. If it exceeded its jurisdiction in granting the continuance demanded, the plaintiff had an appropriate remedy for correcting the error by direct proceedings. We cannot in this action inquire into that question. In our opinion, on the undisputed evidence, the motion of the defendant for a verdict in his favor should have been sustained.

III. The petition alleges that the value of the property in controversy is two hundred dollars. The answer alleges that it is worth more than that sum. On the trial the defendant conceded that it was of the value alleged in the petition. Evidence was given on behalf of the plaintiff to the same effect. The defendant, in his motion for a verdict, asked that the value of the property be fixed "at the sum testified to." Since there was practically no dispute as to the value, the defendant was entitled to judgment for two hundred dollars.

3. PRACTICE: motion for judgment: evidence.

The judgment of the district court is reversed, and the cause is remanded, with directions to that court to render judgment in favor of the defendant for the amount stated, with interest thereon at six per cent. per annum from the date of its former judgment. REVERSED.